IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GERALD KAUFER, M.D.,** | ) |
| **Plaintiff,** | ) |
| v. | ) 2:04-cv-1325 |
| **UPMC HEALTH PLAN, INC. and UPMC HEALTH BENEFITS, INC.,** | ) |
| **Defendants.** | ) |

### MEMORANDUM OPINION AND ORDER OF COURT

Before the Court for consideration and disposition is the MOTION OF DEFENDANTS FOR SUMMARY JUDGMENT, with brief in support (*Document Nos. 22 & 23*), PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (*Document No. 26*), and DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (*Document No. 30*). The issues have been fully briefed, and the matter is ripe for disposition. For the reasons which follow, the Motion will be denied.

### Background

Plaintiff Gerald Kaufer, M.D. ("Plaintiff") was employed by defendants UPMC Health Plan Inc. and UPMC Health Benefits, Inc. (collectively "Defendant") beginning November 11, 1999 in the position of Medical Director. Def's Stmt. of Facts at ¶ 1. Plaintiff was initially employed under the terms of the Employment Agreement between the parties effective November 11, 1999 and, subsequently, under the terms of the Employment Agreement effective February 12, 2001. *Id*. Most of Plaintiff's time as a Medical Director was spent determining whether UPMC Health Plan, a health insurance company, would cover the costs of health care services provided by health care providers such as hospitals and physicians. *Id*. at ¶ 5.

In 2003, Sandra McAnallen ("McAnallen") was UPMC Health Plan's Vice President of Network Performance and Corporate Compliance and was responsible for the Medical Management Department. *Id*. at ¶ 6. Beginning in April 2003, Linda Gerheim ("Gerheim") was UPMC Health Plan's Director of Medical Management, and she reported to McAnallen in the Medical Management Department. *Id*. at ¶ 11. Generally speaking, Gerheim felt that Plaintiff

was fairly difficult to work with, and when McAnallen asked about Plaintiff, she told McAnallen what she thought.  *See* Def's Stmt. of Facts at ¶¶ 12-14.

On August 18, 2003, Plaintiff suffered a ruptured anterior communicating artery aneurism for which he underwent hospitalization and rehabilitation.  *Id*. at ¶ 17.  The limitations which resulted from the aneurism form the foundation of Plaintiff's claim of disability.  *See id.*  Following his hospitalization, Plaintiff was treated for his aneurism by Rebecca Garrett, M.D. ("Dr. Garrett"), a physiatrist who worked in the brain injury division of the UPMC Rehabilitation Center.  *Id*. at ¶ 18.  In October of 2003, Dr. Garrett referred Plaintiff to ReMed, a business which specializes in neurorehabilitation.  *Id*. at ¶ 19.

A meeting was held on October 28, 2003 among Dr. Garrett, Jennifer Fandray ("Fandray"), a vocational case manager with ReMed, McAnallen, Gerheim, and Dana Malin ("Malin"), a Human Resources manager with the Health Plan.  *Id*. at ¶ 20.  At the meeting it was agreed that Plaintiff would "return to work" for on-site job therapy the week of November 3, 2003, and would work two hours per day, two days per week.  Def's Stmt. of Facts at ¶ 22; Pltf's Resp. to Stmt. of Facts at ¶ 22.  Plaintiff's on-site job therapy was subject to various limitations, *e.g.*, his hours were limited and he was not permitted to take any cases or handle "live" phone calls.  Pltf's Resp. to Stmt. of Facts at ¶ 22.  Plaintiff was basically re-learning how to do his job.

Defendant was released to return to work by three of his treating physicians on December 22, 2003.  Def's Stmt. of Facts at ¶ 52.  A few minutes after he arrived at work, Plaintiff was instructed to report to Human Resources, where he was informed that his employment was terminated.  Pltf's Stmt. of Facts at ¶ 23.  Plaintiff was told that his employment was terminated without cause, and he was provided with a letter signed by McAnallen which indicated the same. *Id*. at ¶ 24.

On February 3, 2005, Plaintiff filed an Amended Complaint which alleges unlawful retaliation, disability discrimination and failure to accommodate, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA") and the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951 *et seq*. ("PHRA").  Defendant has moved for summary judgment on all claims.

Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> [Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993).

In federal employment discrimination cases, the familiar *McDonnell Douglas*[1] formulation regarding the appropriate burdens of proof and allocation of production of evidence govern and guide the analysis of the evidence presented on a motion for summary judgment. Under *McDonnell Douglas*, the plaintiff must establish a *prima facie* case of discrimination; if this burden is met, the defendant must then articulate some legitimate, nondiscriminatory reason for the employee's treatment. *McDonnell Douglas*, 411 U.S. at 802. If the defendant articulates a legitimate, nondiscriminatory reason for the employee's treatment, then the plaintiff must demonstrate that the defendant's stated reasons were a pretext for discrimination. *Id*. at 804. The *prima facie* case under *McDonnell Douglas* "is not intended to be onerous." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir.), *cert. denied*, 515 U.S. 1159 (1995). The *prima*

---

[1]. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*facie* case raises an inference of discrimination because the courts presume that the challenged acts, if otherwise unexplained, are "more likely than not based on the consideration of impermissible factors." *Id*.

## Discussion

A.  Retaliation - ADA and PHRA[2]

The Amended Complaint alleges that "Defendants fired Kaufer in retaliation for requesting a reasonable accommodation under the ADA, in violation of 42 U.S.C. § 12203(a)." Amended Complaint at ¶ 13.  To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir.1997); *see also Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000).[3]

Defendants contend that summary judgment should be granted because Plaintiff did not request an accommodation, and because there is no evidence of a causal link between any protected conduct and the decision to terminate his employment.  Def's Br. at 13.  However, there is evidence that Plaintiff requested an accommodation through both his physician and through ReMed.  Pltf's Stmt. of Facts at ¶¶ 19, 126-29, 133, 143-44; *see also Trepka v. Board of Educ.*, 28 Fed. Appx. 455, 459 (6th Cir. 2002) ("A request for accommodation by an employee or

---

[2].  The anti-retaliation provisions found in the ADA and PHRA are not materially different, and Pennsylvania courts generally interpret the PHRA in accordance with its federal counterparts.  *See Kelly v. Drexel Univ.*, 94 F.3d 102, 104 (3d Cir. 1996).  Although the Court speaks only in terms of federal law, the analysis of Plaintiff's ADA claims applies with equal force to his PHRA claims.  *See Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) ("[T]he PHRA is to be interpreted as identical to federal antidiscrimination laws except where there is something specifically different in its language requiring that it be treated differently.")

[3].  The burden-shifting framework of *McDonnell Douglas* applies to ADA retaliation claims.  *See Walton v. Mental Health Ass'n of Southeastern Pa.*, 168 F.3d 661, 667-68 (3d Cir. 1999).

her physician triggers the employer's statutory duty reasonably to accommodate the employee's condition."); *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1284 (7th Cir. 1996) (employee who communicated through his doctor that he wanted a "less stressful" position put defendant on notice that it was to engage in the interactive process).  As for evidence of a causal link, there is a close temporal relationship between Plaintiff's requests for accommodation and his termination.  In fact, the evidence of record reflects that his employment was terminated during the interactive process.  This fact, combined with other circumstantial evidence of causation, are sufficient to create a genuine issue of material fact.  *See* Pltf's Br. at 19-20; Pltf's Stmt. of Facts at ¶¶ 145-88.  Therefore, the Court finds that Plaintiff had demonstrated a *prima facie* case of unlawful retaliation.

Defendant also contends that Plaintiff cannot rebut its legitimate, nondiscriminatory reasons for his termination.  Def's Br. at 14.  Defendant's explanation is that "[b]ased on information regarding plaintiff's demeanor and the difficulty in working with him before he had sustained his brain injury, which was told to her by Linda Gerheim and other nurses, McAnallen decided to terminate defendants' employment agreement with plaintiff because she knew that she wanted a Medical Director who would be more interactive than plaintiff under the soon-to-be implemented new business model."  Def's Br. at 10 (citing Def's Stmt. of Facts at ¶ 56).  Defendant has cited ample evidence to support its position.  *See id.* (citing Def's Stmt. of Facts at ¶¶ 14-15) (evidence that Plaintiff was negative, blunt, gruff, unprofessional, undiplomatic, and often raised his voice).  The Court finds that Defendant has adduced a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

"[T]o defeat summary judgment when the defendant answers the plaintiff's *prima facie* case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could *reasonably* either (1) disbelieve the employer's articulated legitimate reasons for its action, or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).  The *Fuentes* court went on to describe the quantum of evidence required to avoid summary judgment as follows:

5

> [T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons ... was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext). To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.

*Id*. at 764-65 (citations omitted).

In order to satisfy the first prong of *Fuentes*, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id*. at 765 (citations and quotation marks omitted); *Keller v. Orix Credit Alliance*, 130 F.3d 1101, 1108-09 (3d Cir. 1997 (*en banc*). In order to satisfy the second prong of *Fuentes*, a plaintiff must identify evidence that "allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Keller*, 130 F.3d at 1111 (*quoting Fuentes*, 32 F.3d at 762). In other words, to satisfy the second prong a plaintiff "must point to evidence that proves ... discrimination in the same way that critical facts are generally proved - based solely on the natural probative force of the evidence." *Keller*, 130 F.3d at 1111. Finally, in a recent age discrimination case the Third Circuit has reaffirmed the propositions that "the plaintiff must demonstrate that *each* of the employers (*sic*) proffered nondiscriminatory reasons are pretextual," and that a district court may grant summary judgment in favor of the employer notwithstanding the plaintiff's ability to cast doubt upon some, but not all, of the proffered reasons. *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) (*citing Fuentes, supra*, 32 F.3d at 764) (emphasis in original). The *Kautz* court also reiterated the caveat that a plaintiff can demonstrate pretext "by showing that some of the employer's proffered reasons are a pretext in such a way that the employer's credibility is seriously undermined, therefore throwing all the proffered reasons into doubt." *Id*. (*citing Fuentes,* 32 F.3d at 764 n. 7).

To determine whether a proffered reason for an employment decision is pretextual, "what

matters is the perception of the decision maker." *Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991), *overruled in part on other grounds*, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993); *see also Fuentes*, 32 F.3d at 766-67 (noting that the state of mind of the relevant decisionmaker must be shown to establish that proffered reasons are, in fact, pretextual). It is undisputed that McAnallen was the decisionmaker. *See* Def's Br. at 10.

At his deposition Plaintiff disputed Gerheim's deposition testimony that he was gruff, unprofessional, undiplomatic, and often raised his voice toward other physicians.[4] Pltf's Dep. at 50-53. There is also a fair amount of circumstantial evidence from which a fact finder could find that Defendant's legitimate, nondiscriminatory reasons are pretextual. The termination letter given to Plaintiff, which was signed by McAnallen, reflects that he was terminated "without cause," which explanation was later given to the EEOC. *See* Pltf's Br. at 15. However, Defendant asserted in answers to written interrogatories, which were verified by McAnallen, that Plaintiff's contract was not renewed because he was a mediocre performer, difficult to work with, and was abrasive and condescending toward his co-workers. Answer to Plaintiff's First Interrogatories and Request for Production of Documents Directed to Defendants, Interrogatory #2. However, at her deposition McAnallen essentially denied that there was any problem with Plaintiff's job performance, and denied that Plaintiff did not get along with his staff.[5] After an off-the-record discussion with Defendant's attorney, McAnallen announced that she wanted to clarify her earlier testimony, and she went on to testify that Plaintiff's performance was "mediocre" or "middle of the road." McAnallen Dep. at 151. However, McAnallen never testified that Plaintiff was discharged because he was blunt, gruff, unprofessional, undiplomatic, and often raised his voice. Additionally, on November 20, 2003, one day after Dr. Garrett had

---

[4]. It is worth mentioning that the Third Circuit does not "require the plaintiff to adduce evidence directly contradicting the defendant's proffered legitimate reasons." *Antol v. Perry*, 82 F.3d 1291, 1301 (3d Cir. 1996) (citation omitted).

[5]. *See, e.g.*, McAnallen dep. at 143 ("Q: Could you tell me what it is that Dr. Kaufer did that caused you not to renew his contract or not to renew his employment? A: He really didn't do anything. It was just a determination to terminate the agreement.").

allowed Plaintiff to increase his work hours, McAnallen requested that Defendant's Human Resources department pull Plaintiff's personnel file and search for performance evaluations, but did not explain why she needed them. Pltf's Resp. to Def's Facts at ¶ 38. The Court finds that these inconsistencies, incoherencies and contradictions, as well as the totality of the circumstances, create a genuine issue of material fact as to whether Defendant's rationale for terminating Plaintiff's employment was pretextual. Therefore, the Court will deny summary judgment on these claims.

B.   Diasability Discrimination - ADA and PHRA

The Amended Complaint alleges that "Defendant fired Kaufer because of his disability, in violation of 42 U.S.C. § 12112(a)." Amended Complaint at ¶ 19. A plaintiff establishes a *prima facie* case of discrimination under the ADA by demonstrating: (1) he is a disabled person within the meaning of the ADA, *i.e.*, a "qualified individual with a disability";[6] (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination. *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998) (*citing Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir.1996)).

Defendant argues that Plaintiff's discrimination claim must fail because he does not have a "disability" under the ADA, as defined by 42 U.S.C. § 12102(2). Def's Br. at 3. Under the ADA, a "disability" is:

(A)   a physical[7] or mental impairment that substantially limits one or more of the major

---

[6]. The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 193 (2002).

[7]. A "physical impairment" is "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin and

        life activities of such individual;

(B)    a record of such impairment;[8] or

(C)    being regarded as having such impairment.

42 U.S.C. § 12102(2); *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 193 (2002).

        a.    <u>Whether Plaintiff is Actually Disabled?</u>

Defendant contends that Plaintiff is not actually disabled because the limitations caused by his brain aneurysm were temporary. Def's Br. at 4-5. Generally speaking, a "transient, nonpermanent condition," *McDonald v. Commonwealth*, 62 F.3d 92, 94-97 (3d Cir.1995), or "a temporary, non-chronic impairment of short duration" is not a disability under the ADA. *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 380 (3d Cir. 2002) (citation omitted) (plaintiff's pneumonia was "a temporary impairment of his ability to breathe, and hence not a disability for purposes of the ADA.").[9] However, an ADA plaintiff "does not need to show that his disability is permanent; instead, under the EEOC regulations, the 'nature and severity' of [his] impairment and its 'duration or expected duration,' along with the 'permanent or long term impact' of that impairment, are factors to be considered in determining whether an individual is substantially limited in a major life activity." *Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 765 (3d Cir. 2004) (citing 29 C.F.R. § 1630.2(j)(2)). The *Williams* court also stated that if an impairment and its impact are less than permanent, yet still significantly restrict a person's ability to perform a class of jobs, summary judgment on the issue of whether a plaintiff

---

endocrine." 29 C.F.R. § 1630.2(h).

[8]. The Amended Complaint alleges that Plaintiff has "a history of such a disability," but neither party contends that Plaintiff is disabled due to "a record of such impairment."

[9]. *See also Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 765 (3d Cir. 2004) ("[T]he EEOC has suggested, for example, that broken limbs, sprained joints, concussions, appendicitis, and influenza, being impairments of a temporary nature "with little or no long term or permanent impact," cannot as a matter of law substantially limit an individual in a major life activity.").

is "substantially limited" is inappropriate. *Id*.

In mid to late September of 2003, Plaintiff was substantially limited in his ability to think and to work as a physician. Dr. Garrett's Dep. at 10-11. However, the evidence of record reflects that his cognitive abilities improved over time. Indeed, on January 7, 2004, one of Plaintiff's doctors found that he had "no residual neurologic or intellectual deficits as a result of his subarachnoid hemorrhage and anterior communicating-artery system" and was "perfectly capable of returning to work as a surgeon." Def's Stmt. of Facts at ¶ 58. Plaintiff's statements on his EEOC intake questionnaire, which was completed on January 30, 2004, are essentially consistent with that assessment. *Id*. at ¶ 59. Thus, there is some factual basis for Defendant's contention that Plaintiff is not "disabled" due to the temporary nature of his injury. However, at Plaintiff's March 17, 2005 deposition, he testified that due to his brain aneurism he "must do everything slower," needs to "take frequent breaks," is "unable to concentrate like [he] did," is unable to perform operations and "would not put [himself] in a position of making decisions about patients that were life threatening." Kaufer dep. at 28-29. Thus, there is evidence of ongoing limitations imposed by Plaintiff's brain aneurism.

The nature and severity of Plaintiff's initial impairment, *i.e.*, a period of substantially limited cognitive functioning, weigh in favor of submitting the issue of actual disability to a fact finder. As for the "duration or expected duration" and the "permanent or long term impact" of the limitations caused by Plaintiff's brain aneurism, the evidence of record indicates that most of Plaintiff's cognitive functioning has returned, but as of March 2005 he still suffers from the effects of the brain aneurism. In light of the totality of the circumstances, and viewing the evidence in the light most favorable to Plaintiff, the Court finds that the issue of whether Plaintiff was "actually disabled" should be submitted to a fact finder. *See Williams*, 380 F.3d at 765.

b. <u>Was Plaintiff "Regarded As" Disabled?</u>

Defendant contends that it did not regard Plaintiff as disabled. Def's Br. at 5-8. A person is regarded as having a disability if the person:

(1) Has a physical or mental impairment that does not substantially limit major life

>   activities but is treated by the covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) Has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.

*Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 188 (3d Cir.1999) (quoting 29 C.F.R. § 1630.2(1)). Additionaly, in order to be covered under the "regarded as" prong of the ADA, the employer must "regard the employee to be suffering from an impairment within the meaning of the statutes, not just that the employer believed the employee to be somehow disabled." *Rinehimer v. Cemcolift*, Inc., 292 F.3d 375, 381 (3d Cir. 2002).

In order to determine whether Defendant regarded Plaintiff as disabled, the Court must consider the information Defendant had regarding Plaintiff's condition and its response to that information. *Buskirk v. Apollo Metals*, 307 F.3d 160, 167 (3d Cir. 2002). "[E]ven an innocent misperception based on nothing more than a simple mistake of fact as to the severity, or even the very existence, of an individual's impairment can be sufficient to satisfy the statutory definition of a perceived disability." *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 144 (3d Cir.1998) (*en banc*). Additionally, the analysis "focuses not on [the plaintiff] and his actual disabilities, but rather on the reactions and perceptions of the persons interacting or working with him." *Kelly*, 94 F.3d at 108-09 (stating that the "mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate ... that the employer regarded the employee as disabled"). Finally, "an employer's perception that an employee cannot perform a wide range of jobs suffices to make out a 'regarded as' claim." *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 188 (3d Cir. 1999).

The evidence of record reflects that McAnallen and numerous others were well aware of Plaintiff's brain aneurism and the limitations it caused. *See* Pltf's Resp. to Def's Facts at ¶ 20. There is also evidence that Defendant was, generally speaking, very concerned about Plaintiff's ability to fulfill his job duties due to his limitations. For example, the evidence of record reflects that McAnallen and/or Malin had expressed concern over the legality of allowing Plaintiff to

11

return to work and were hesitant to do so due to concerns that he would make a mistake, and that his mistake would lead to a lawsuit. *Id*. Additionally, Defendant allowed Plaintiff to participate in "on-site" job therapy prior to resuming his actual duties, *see id.* at ¶ 21, and he was not permitted to handle "live" or "real" cases during this time, *id*. at ¶ 22. The Court finds that this evidence suffices to create a genuine issue of material fact regarding whether Defendant regarded Plaintiff as disabled.

      c.     Evidence of Pretext

Defendant contends that Plaintiff's disability discrimination claims must fail because there is insufficient evidence of pretext. Def's Br. at 8-11. For the reasons set forth above, the Court does not agree. *See supra* at 7-8. Therefore, the Court will deny summary judgment on Plaintiff's claims of disability discrimination.

C.    Failure to Accomodate - ADA and PHRA

The Amended Complaint alleges that "Defendant ... refused to make reasonable accommodations for Kaufer's known or perceived disability[,] in violation of 42 U.S.C. § 12112(b)(5)(A)." Amended Complaint at ¶ 19. The ADA prevents an employer from failing to provide "a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). To establish a *prima facie* case of failure to accommodate, Plaintiff must prove: (1) she is an individual with a disability under the ADA;[10] (2) she can perform the essential functions of her position with an accommodation, (3) her employer had notice of the alleged disability, and (4) the employer failed to accommodate her. *Conneen v. MBNA America Bank,* 182 F. Supp. 2d 370, 378-79 (D. Del. 2002).

Defendant contends that summary judgment should be granted because Plaintiff never

---

[10]. The Third Circuit has held that an employer is required to provide reasonable accommodations to an employee it perceives as disabled. *Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 776 (3d Cir. 2004).

sought a reasonable accommodation, *see* Def's Br. at 11, but, as discussed above the evidence of record reflects that Plaintiff did so through both his physician and ReMed. Defendant also contends that an accommodation was not required because Plaintiff "could perform all functions of the job," as he stated on his EEOC intake questionnaire. Def's Br. at 12. However, despite his statement, there is considerable evidence that Plaintiff could not perform all function of his job, and that Defendant was very concerned with his limitations. Finally, Defendant contends that "[e]ven had an accommodation been required, ... [it] did agree to the return to work plan initially recommended by ReMed and Dr. Garrett." Def's Br. at 12. Therefore, according to Defendant, "to the extent any accommodation would have been required, the initial return to work plan agreed upon by Defendants proved to be a reasonable and effective accommodation to plaintiff's brain injury." *Id*. It may well be that the initial return to work plan was a reasonable accommodation to Plaintiff's impairment. A fact finder, however, could find that terminating Plaintiff's employment was not a reasonable accommodation. Therefore, the Court will deny summary judgment on these claims.

Conclusion

For the reasons hereinabove set forth, the Motion of Defendants for Summary Judgment will be denied. An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GERALD KAUFER, M.D.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) |
| | )   2:04-cv-1325 |
| **UPMC HEALTH PLAN, INC. and** | ) |
| **UPMC HEALTH BENEFITS, INC.,** | ) |
| | ) |
| **Defendants.** | ) |

**ORDER OF COURT**

AND NOW, this 13th day of July, 2006, in accordance with the foregoing Memorandum Opinion it is hereby ORDERED, ADJUDGED and DECREED that the Motion of Defendants for Summary Judgment (*Document No. 22*) is **DENIED**.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:   Samuel J. Cordes, Esquire
Email: scordes@ocmilaw.com

John J. Myers, Esquire
Email: jmyers@eckertseamans.com

Patrick F. Kilker, Esquire
Email: pkilker@eckertseamans.com